People v Grays (2018 NY Slip Op 04392)





People v Grays


2018 NY Slip Op 04392


Decided on June 14, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 14, 2018

107761

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
JERRY D. GRAYS, Appellant.

Calendar Date: April 30, 2018

Before: McCarthy, J.P., Lynch, Devine, Clark and Pritzker, JJ.


Rural Law Center of New York, Castleton (Keith Schockmel of counsel), for appellant, and appellant pro se.
John M. Muehl, District Attorney, Cooperstown (Michael F. Getman of counsel), for respondent.


Clark, J.

MEMORANDUM AND ORDER
Appeals (1) from a judgment of the County Court of Otsego County (Burns, J.), rendered July 17, 2015, upon a verdict convicting defendant of the crimes of conspiracy in the second degree and criminal solicitation in the second degree, and (2) by permission, from an order of said court, entered November 4, 2016, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
In October 2010, while serving a term of incarceration in the Otsego County jail, defendant indicated to a fellow inmate that he wanted to have his former girlfriend, the mother of his children, murdered and asked if the inmate knew of anyone he
could hire for that purpose. The inmate reported defendant's request to his attorney, who, in turn, contacted the authorities. As part of the ensuing investigation into the legitimacy of defendant's request, an undercover police officer posed as a hit man for hire. Over the course of two separate phone calls and a meeting at the jail, defendant agreed to pay the purported assassin $100,000 to have his ex-girlfriend killed. In furtherance of the agreement, defendant provided the undercover officer with the address and physical description of his ex-girlfriend, as well as two separate maps of the floor plan of her home. Defendant was arrested shortly thereafter and charged by indictment with conspiracy in the second degree. After a jury trial, defendant was convicted as charged and sentenced to 8&frac13; to 25 years in prison. However, on appeal, we reversed the judgment of conviction and dismissed the indictment as jurisdictionally defective, "without [*2]prejudice to the People to re-present any appropriate charges to another grand jury" (People v Grays, 121 AD3d 1178, 1179 [2014]).
The following month, a second grand jury charged defendant with conspiracy in the second degree and criminal solicitation in the second degree. Defendant was represented by counsel throughout pretrial proceedings; however, prior to trial, County Court granted defendant's request to proceed pro se. After a jury trial, defendant was once again convicted as charged. County Court sentenced him to an aggregate prison term of 8&frac13; to 25 years and imposed a lengthy order of protection against defendant in favor of the ex-girlfriend and their two children. County Court denied defendant's subsequent motion, made pursuant to CPL 440.10, for an order vacating the judgment of conviction, without a hearing. Defendant now appeals from the judgment of conviction and, by permission, from the order denying his postconviction motion.
Defendant initially contends that his motion to dismiss the indictment should have been granted because, without any curative instruction having been given by the People, he was required to testify before the grand jury in prison garb and restraints and while accompanied by an armed and uniformed correction officer. However, defendant failed to timely file this motion within five days of his arraignment, as required (see CPL 190.50 [5] [c]), and, thus, County Court properly denied the motion (see People v Littebrant, 55 AD3d 1151, 1153 [2008], lv denied 12 NY3d 818 [2009]). Additionally, a review of the indictment belies defendant's assertion that count 1 of the indictment, charging him with conspiracy in the second degree, did not charge him with committing any overt acts in furtherance of the alleged conspiracy (see People v Lakomec, 86 AD2d 77, 78-79 [1982]; compare People v Pichardo, 160 AD3d 1044, 1048 [2018]).
Next, defendant asserts that County Court's searching inquiry was insufficient to ensure that his waiver of his right to counsel was knowing, voluntary and intelligent. Where a defendant invokes his constitutional right to forgo the assistance of counsel and proceed pro se (see Faretta v California, 422 US 806, 819 [1975]; People v McIntrye, 36 NY2d 10, 15 [1974]), the trial court must determine whether the defendant is knowingly, voluntarily and intelligently waiving the right to counsel (see People v Crampe, 17 NY3d 469, 481 [2011], cert denied 565 US 1261 [2012]; People v Arroyo, 98 NY2d 101, 103 [2002]). In ascertaining whether such a waiver is knowing, voluntary and intelligent, the court must "test an accused's understanding of the waiver" and be "reasonably certain that [he or she] appreciates the dangers and disadvantages of giving up the fundamental right to counsel" (People v Smith, 92 NY2d 516, 520 [1998] [internal quotation marks and citations omitted]; see People v Slaughter, 78 NY2d 485, 491 [1991]; People v Sawyer, 57 NY2d 12, 21 [1982], cert denied 459 US 1178 [1983]). The court must also "delve[] into a defendant's age, education, occupation, previous exposure to legal procedures and other relevant factors bearing on a competent, intelligent, voluntary waiver" (People v Smith, 92 NY2d at 520; see People v Providence, 2 NY3d 579, 583 [2004]). While the required searching inquiry need not be conducted in any specific manner, it "'must accomplish the goals of adequately warning a defendant of the risks inherent in proceeding pro se, and apprising a defendant of the singular importance of the lawyer in the adversarial system of adjudication'" (People v Arroyo, 98 NY2d at 104, quoting People v Smith, 92 NY2d at 520; see People v Kaltenbach, 60 NY2d 797, 799 [1983]).
Here, County Court went to great lengths to impress upon defendant the dangers and disadvantages of self-representation. The court thoroughly tested defendant's knowledge and understanding of the law and criminal procedure and, in doing so, specifically pointed out to defendant several areas in which his knowledge and understanding were lacking, including with respect to the applicable standard of proof and the rules governing cross-examination and the [*3]admission of evidence. The court emphasized that although defendant demonstrated a "basic understanding" of the law, he would be at a distinct disadvantage because his understanding was not "complete." The court stated that self-representation was "fraught with peril" and repeatedly urged defendant to reconsider his request to proceed pro se. Further, in conducting its inquiry, County Court elicited from defendant appropriate and relevant pedigree information, which revealed that defendant was a high school graduate and had previous experience with the criminal justice system. Upon our review of the record, we are satisfied that County Court engaged in a sufficient searching inquiry so as to enable a finding that defendant knowingly, voluntarily and intelligently waived his right to counsel (see People v Jackson, 160 AD3d 1125, 1126-1127 [2018]; People v Sanders, 295 AD2d 639, 640 [2002], lv denied 98 NY2d 771 [2002]; compare People v Myers, 160 AD3d 1029, 1032-1033 [2018]; People v Guarnieri, 122 AD3d 1078, 1080-1081 [2014]). Moreover, contrary to his assertions, defendant was not entitled to hybrid representation (see People v Silburn, 31 NY3d 144, 151 [2018]; People v Rodriguez, 95 NY2d 497, 501 [2000]; People v Mirenda, 57 NY2d 261, 265-266 [1982]), and County Court did not abuse its discretion in limiting stand-by counsel's role to that of an "advisor" (see People v Yu-Jen Chang, 92 AD3d 1132, 1133 [2012]; People v Hilts, 46 AD3d 947, 949 [2007], affd 13 NY3d 895 [2009]).
Nor do we find merit in defendant's argument that County Court should have charged the jury with respect to the defense of renunciation. A defendant facing charges for criminal solicitation and/or conspiracy is entitled to the affirmative defense of renunciation only where, "under circumstances manifesting a voluntary and complete renunciation of his [or her] criminal purpose, the defendant prevented the commission of such crime" (Penal Law § 40.10 [4]). Here, assessed in the light most favorable to defendant (see People v Taylor, 80 NY2d 1, 12 [1992]; People v Butts, 72 NY2d 746, 750 [1988]), there is no reasonable view of the evidence from which a jury could conclude that defendant took any affirmative steps that "would have prevented the crime in the event that [the undercover police officer] had intended to carry out the [solicited murder]" (People v Sisselman, 147 AD2d 261, 264 [1989], lv denied 74 NY2d 819 [1989]). Accordingly, County Court properly rejected defendant's request for a renunciation charge.
Defendant also argues that he was deprived of a fair trial because County Court indicated on two occasions during its final instructions to the jury that he had prior criminal convictions, thereby inviting the jury to unduly speculate as to the nature of those prior convictions. However, defendant failed to preserve this argument by objecting to the alleged improper instructions (see CPL 470.05 [2]; People v Wright, 139 AD3d 1094, 1100 [2016], lvs denied 28 NY3d 939 [2016], 29 NY3d 1089 [2017]; People v Briskin, 125 AD3d 1113, 1120-1121 [2015], lv denied 25 NY3d 1069 [2015]). In any event, were we to reach this argument, we would find it to be unpersuasive under the circumstances of this case, as the jury knew that defendant was incarcerated at the time that he committed the acts giving rise to the present convictions through testimony and video recordings of his calls and conversation with the undercover officer. In addition, defendant repeatedly referenced his prior criminal history, including his convictions for criminal contempt in the second degree, in both his own testimony and in questions he posed to various witnesses. Thus, we would find that County Court's instructions were proper.
Further, despite defendant's contentions to the contrary, County Court acted well within its discretion in issuing an order of protection that expires in 2047 (see CPL 530.13 [4] [A] [i]-[ii]). Defendant's assertion that County Court acted vindictively in imposing his sentence is unsupported by the record, particularly since County Court imposed the same sentence on defendant's conviction for conspiracy in the second degree after retrial (see People v Grice, 98 [*4]AD3d 755, 755 [2012], lv denied 20 NY3d 932 [2012]). Considering defendant's criminal history, which includes several convictions for violating orders of protection issued in favor of his ex-girlfriend, and the serious nature of the underlying offenses, we find no abuse of discretion or extraordinary circumstances warranting a reduction of the sentence in the interest of justice (see People v Gerenstein, 179 AD2d 930, 934 [1992], lv denied 79 NY2d 1049 [1992]). The remaining arguments raised by defendant in connection with his direct appeal have been examined and found to be without merit. Finally, County Court properly denied defendant's CPL 440.10 motion inasmuch as the arguments raised by defendant therein could be — and have been — resolved on direct appeal (see CPL 440.10 [2] [b]; People v Rebelo, 137 AD3d 1315, 1317 [2016], lv denied 28 NY3d 936 [2016], cert denied ___ US ___, 137 S Ct 385 [2016]; People v Johnson, 24 AD3d 967, 970 [2005], lv denied 6 NY3d 814 [2006]).
McCarthy, J.P., Lynch, Devine and Pritzker, JJ., concur.
ORDERED that the judgment and order are affirmed.